Good morning, your honors. My name is Anthony Holtzman, and I represent the petitioner in this matter, Mr. Robert Marinescu. May I please reserve two minutes for rebuttal? Okay. Thank you, your honor. The petitioner in this matter, Mr. Marinescu, is a single male alien who's a native of Romania. He is also, importantly, a member of the Roma, also known as the Romani ethnic group, and he was identified to be removed to his native Romania, and removal proceedings were instituted against him. Your brief really focuses on the fact that, from your perspective, there's substantial evidence to support the immigration judge's ruling, unless I'm misunderstanding your argument. But the ruling before us is the BIA's ruling, not the immigration judge's ruling. It seems to me that you can look at this record and affirm either ruling, depending on your standard of review and your point of reference, and you have the burden on appeal, and I would agree with you there's a record there that would support the immigration judge's ruling. But it seems to me there's also a record there that, the same record, supports the BIA's interpretation of the same facts that the IJ interpreted differently. If the BIA's ruling is what we're reviewing, why doesn't substantial evidence support the BIA's ruling? Your Honor, that's the point I'm trying to make in this case. It's exactly that, which is that I believe that this court should be looking to see whether the BIA indeed made an error of law that justifies this court's reversal of its decision, and I believe that it did. And in the sense that it did, Your Honor, is that the BIA inappropriately applied the wrong standard of review to the IJ's findings of fact in this case. There was an amendment to the relevant federal regulations in 2002, and under that amendment, when the BIA decides an appeal from the IJ, if that appeal was filed after September 25th of 2002, the BIA cannot conduct a de novo review of the IJ's factual findings any longer. Now, that wasn't the case prior to September 25th of 2002, but afterwards, and our appeal in this case was filed with the BIA in March of 2004. So the BIA was governed by this new regulatory scheme, and it was charged with reviewing the IJ's factual findings under the clearly erroneous standard, but that's not what it did, Your Honors. That's not what it did at all. If you review the BIA's decision in this case, which begins, by the way, at page 9a of the Joint Appendix, you'll see that the BIA essentially launches in to its own independent review of the evidence, conducts its own weighing of the evidence, gives certain pieces of evidence more weight than the IJ did, other pieces less weight, and it ultimately improperly substitutes its judgment for the factual findings for that of the IJ, and then uses its judgment to make a determination regarding whether or not Mr. Marinescu will be subjected to persecution or torture if he's removed to Romania. That's an error of law, Your Honor. This Court reviews that de novo. Let's slow down here. First of all, what is our standard of review of whether the Board complied with HCFR 1003.1D3I, which you've just quoted from, that says it will overturn issues of fact only when they're clearly erroneous? Yes, Your Honor. I believe that's a de novo standard of review because that's a question of law, whether the BIA adhered to the regulation and properly applied its standard of review to the IJ's fact-finding. And under that de novo standard of review that this Court would apply to that legal question, this Court should conclude that the BIA inappropriately... a rule restricting its discretion, we are somewhat deferential, are we not, to their interpretation of their own regulations? That's right, Your Honor. As a general proposition, the courts are deferential. Why is that different here? We have said in U.S. v. Bologna, I guess it is, that clearly erroneous in this context, clearly erroneous means, quote, on the entire record, unquote, the BIA is, quote, left with a definite and firm conviction that a mistake was committed. Now, you say that if we read the BIA's opinion, we will certainly be convinced that they didn't find that they were left with a firm conviction that a mistake had been made. That's right, Your Honor. I don't think that's what you'll find. So even if that is the BIA, if that's the standard, I don't think you'll find that's the case. Why do you say that? I mean, they did conclude that a mistake had been made, and they certainly seemed pretty firm about that conviction. I mean, you said the opinion can't be read to apply the right standard because they weighed the evidence. But there's nothing inconsistent between applying a clearly erroneous standard and weighing evidence. That's right, Your Honor. I have to. It says I have to weigh, have to evaluate and assess the evidence in order to do that. That's right, they do. But I think what they did is they just sort of, if you read the opinion, they just sort of, without mentioning the immigration judge's findings of fact in this case, they just sort of set them aside, disregarded them from the outset, and said we basically looked at this case with the de novo type. It doesn't say de novo. It doesn't crib that language. But essentially, if you read the decision, that is what happened, it seems to me. The BIA launches into its own independent review of the evidence rather than saying let's look at what the IJ found to be facts and take them and see if there is a reasonable amount of evidence in this record to support each one of those findings. It doesn't seem to me that that's what happened. Instead, the BIA says we're going to take a new, fresh look at this evidence, pretend that these findings of fact were never made, make our own independent judgments regarding the way to be given that evidence and then use that judgment that we reach on our own from a de novo type of perspective to then generate a conclusion regarding whether or not Mr. Marinescu will be subjected to persecution or subjected to torture. So I don't think that they just simply, they weren't looking at this through the prism of a clearly erroneous standard. They were looking at it through the prism of sort of a de novo review and that's the flavor you get and that's the impression that you get when you read the BIA's decision and that's an error of law. They were required to accept the immigration judge's findings of fact to the extent they were not clearly. Even if they had no faith in the, I mean, getting from law to fact here, I mean, isn't this a case where the IJ accepted expert testimony from somebody he found to be an expert and the board subsequently found that the IJ made a serious mistake by crediting this expert? It seems that that's part of what the board did, yes, your honor. The board decided that it would set aside the credibility determination of the immigration judge, it seems to me. And would that not, could that not constitute a clearly determination that the IJ was finding was clearly erroneous because it was based on somebody who didn't know what he was talking about? Well, that's what the IJ concluded, of course, but I don't think that it did so by saying we are, and not in these words, but we are left with a definite and firm conviction that this individual, Dr. Ian Hancock, was not credible. Instead, it sort of reviewed all the evidence of record and said, you know, we don't want to give that the same type of weight that the IJ gave. We're not going to give the statements that the expert witness made the same kind of weight that the IJ made. I don't think it's totally, by the way, I don't think the BIA totally sets aside all of Dr. Hancock's expert testimony, but certain portions of it, indeed, it does. But I don't think that when reading the BIA's decision, you get the impression that it was definitely and firmly convinced that this expert witness's testimony was erroneous or should be disregarded. And I think that, if anything, the BIA is also required to explain the reasons for setting aside findings of fact, and there is really no such explanation set forth in the decision. You instead get the impression that there was a reweighing of the evidence, substitution of judgment, and that, therefore, I believe that was an error of law that this court would justify this court's reversal of the BIA's decision. Which then brings us to the next stage in the analysis is what is the remedy? What should this court do about that? And I believe that this court is well-positioned to apply the legal standard for persecution to the IJ's findings of fact, at least to the ones that are properly supported. And under federal statute, this court is obligated to accept those as conclusive the statute provides,  and I believe this court will discover that if it applies the persecution standard as it's set forth in statutes and regulations as they've been interpreted through case law, applying that standard to the IJ's findings of fact leads to the conclusion that, indeed, it is more likely than not that Mr. Marinescu would be subjected to persecution on the basis of his status as a Romani if he is removed to his native Romania. What I do with findings of fact that are more in the nature of conclusions of fact, and what particularly I'm thinking of is looking at the testimony about what's happened since the fall of communism and whether or not Romania has cleaned up its act in order to enter the European Union on the one hand, and therefore these are kind of token gestures that don't mean much, or whether or not the downfall of the communist regime has removed the kind of centralized control that has given rise now to the opportunity to allow these feelings to vent themselves. The same record is there, the immigration judge looks at it and says the central government is gone, the control is gone, and now the devil has been let loose, it's out of the bottle. Without really focusing on any recent improvements and making one factual conclusion, the BIA looks at it and says, well, you know, they have cleaned up their act because they're trying to get into the European Union. But to me it seems like a conclusion of fact as opposed to a finding of fact, but how should we look at that, both through our own lens, the IJ's perspective and the BIA's perspective? From my perspective, how do we look at that? I think as a starting point, Your Honor, the regulations in question expressly provide that the BIA can't make findings of fact in deciding appeals. That's the first problem. So whether it's a so-called ultimate fact, one that's drawn from underlying facts, or any other type of fact, on its face the regulation says, BIA, you can't make findings of fact when you decide appeals. That can't happen anymore, after September 25th of 2002. So the IJ's findings of fact are what matters. If an IJ's finding of fact regarding the government's efforts towards the Romano, the IJ in this case found that those efforts were pretextual. If it came up to the BIA, the BIA could have said we're left with a definite and confirmed conviction that that was clear error. It can strike that finding of fact, but it can't make its own replacement finding. It can't say instead we believe those are genuine efforts and we find that to be a fact because the regulation expressly precludes the BIA from doing that sort of thing. And if at the end of the day the BIA says, you know, a lot of these facts are clearly erroneous. We're striking this one, this one, this one, and this one. And we don't, now as the BIA, we don't have enough facts to decide this case. We can't apply the persecution standard. There's insufficient facts. It can remand to the immigration judge for further fact finding. And that's exactly what the regulation provides that it should do, and that's under the circumstances. So I don't think it's the role of the BIA to be reweighing evidence and making its own factual findings anymore. However, as at least two judges on this panel have recognized prior to September 25th, 2002, in an opinion by Judge McKee, which is Thomas v. Attorney General 210 Federal Appendix 195, Judge Nygaard's opinion in Chavarria v. Gonzalez 446 F3rd 508. His comments, mine doesn't. Mine's non-presidential. Oh, okay. So I'll defer to my colleague on that one. That's fine, Your Honor. And indeed, that opinion expressly states that after September 25th, 2002, the BIA no longer has this de novo fact finding function. And instead, it has to accept the IJ's findings of fact as being correct unless it is left with the so-called definite and firm conviction that they're clearly erroneous, in which case it can strike them, and that's it. So in this case, Your Honor, I believe that the application of the persecution standard to the findings of fact as they're made by the IJ, properly supported by the evidence, leads to the conclusion that Mr. Marineski would more likely to not be persecuted. I thank you for your time. My red light's on. Thank you. Ms. Frye? Yes, good morning, Your Honors. I'm Mary Catherine Frye for the government. Let me sort of – I understand the principle argument that has just been made, and the principle argument that was made in your friend's brief to be that there was substantial evidence to support the IJ, and accordingly wasn't the BIA guilty of violating its own regulations, i.e., HCFR 1003.1D3i. Your brief does not – not only does not comment on that argument, it doesn't cite or refer to that I could find that regulation in any way. You're right. You're right, Your Honor. Until I got the reply brief, I honestly didn't understand the petitioner's argument. I think I understand it much better now, and I apologize for not addressing that point. And I think I'm prepared to address it now. Why is it not true? If it's true that there is substantial evidence to support the IJ's finding of fact from the expert or any other source, why – how can the BIA overturn those factual findings, given this regulation? I don't think that the regulation substantially changes the BIA's standard of – pre-existing standard of review. And I think if you look at the cases that have been decided since the regulation was adopted, that there has not been a change. I think that the BIA is to apply the traditional substantial evidence test to the findings of the IJ. And I think in this case it's very clear that the BIA found that there simply was no evidence to support the IJ's finding. And I think that the BIA actually laid it out pretty carefully why they reached that conclusion. They reached it on the entire record. They cited the evidence of the record. And they included their reasoning that basically the IJ's decision was just a series of assumptions based upon speculation, and that there was no evidence indicating – But after that, sure, the IJ went through and looked at the mob violence. I think that's the term the IJ used that talked about the police activity there. The IJ, I don't think, used the term pattern or practice. No, when you read through what the IJ found based upon Hancock's testimony, it seems to me the IJ found a pattern or a practice of conduct, certainly discriminatory conduct. The issue is whether or not that level of discrimination rises to the level of persecution. But it seems to me by the subject of mob violence and the kind of retributions that are taken against gypsies in Romania, I don't know how you can say it doesn't rise to the level of persecution, or at least that the IJ was quite erroneously concluding that. Well, I think that what you'll find if you read his decision carefully is that his findings were fairly limited, and they appear toward the end. What he did was he cited the evidence that Dr. Hancock had presented. I would not read that as a finding, as factual findings, that all of that was true. It's an interesting argument. You can read the record that way. At first, I was inclined to do just that. Because the IJ doesn't specifically say these are my findings, he simply, I think it was he, goes through and recites much of the testimony of Dr. Hancock. But in terms of the IJ, shouldn't we assume that that's exactly why the IJ puts that testimony in the record, because these are the IJs, this is what the IJ is relying upon in reaching his decision? And if that's what he's relying upon, he's found that to be credible issue, hasn't he? Your Honor, I read that IJ's opinion as being an effort to get to a result that he thought was the right result, even though the evidence that was put before him did not support that result. I think if I could refer, Your Honor, to your decision in Zubeda v. Ashcroft, that was the situation of the Congolese woman. I'm sure you do, Your Honor. That was evidence on which, regardless of the individual's personal experience, could support a finding of a likelihood or more than 50-50 likelihood of future persecution or torture. There are no cases that I have been able to find in which Roma from Romania are considered to be subject to a pattern or practice of persecution. There are very few cases addressing appeals of Roma from Romania on this basis. None have found a pattern or practice of persecution. But that might just simply be a reflection of the number of Roma who are here in this country. That may be. Because I've never seen one before either, to tell you the truth. But what I would emphasize to you, Your Honor, is the evidence looked at as a whole, and this is what the BIA looked at, showed, certainly, I think that there was considerable evidence, and I think we all acknowledge that, of discrimination against Roma in Romania. But Mr. Marinescu himself and members of his family could recite no instances in which they personally had suffered persecution. That was clear. So it had to be based upon, and they've been here since 1990, it had to be based upon some evidence that would convince the finder of fact that there's a pattern or practice which, as I think I put in the footnote, means that any Roma in this country would be withheld from removal to Romania. In other words, it would have to be a blanket fining, and there has not been such a fining at this point. I read the IJ's decision as trying to, you know, give this guy a break without actually having to find that there was a pattern of practice because he didn't have the evidence. And I read the BIA's decision as being a little more cold-hearted and saying, you know, here's the evidence. It does not support a finding that there is a pattern or practice of persecution against Roma in Romania. So you are saying that you want us to be equally cold-hearted? I would prefer to leave that up to you, sir. I would just direct you. I think that the appropriate way to look at this case was set out in the case of Francois versus Gonzales, which was also one of your cases, Your Honor. And at least leaving aside any issue of cold-heartedness, I think that that case gives you the template on how you examine a case of this type because it is factually quite similar. It was decided after the change in the regulation. And in addition to that, as in this case, the alien was a criminal alien, and so the question of it was a post-real ID act case. And I think that if you take a look at the standards that Your Honor used in deciding the Francois case, you get to the place that I have asked the court to get to. And the standard that you have to apply is that the court determines questions of law and the application of law to the facts, but does not perform a reevaluation of facts. And in this case, what you would be looking at is whether the findings of the BIA support its conclusions of law, and given the issue of the regulation, which my opponent has raised, whether that regulation was violated when the BIA looked at the record as a whole and decided that there was no evidence to support the IJ's decision. I think that that's the proper framework for the court to look at this. You say that the BIA found no substantial evidence to support a finding of pattern and practice. It wasn't a question of overturning facts or weighing evidence. Well, they did say, did not the IJ say the government cannot be counted on to support, to protect, I'm sorry, these people? And didn't the BIA say, no, we disagree with that? Well, I'm not sure, I'm sorry, Your Honor, I don't, I could find that quickly. I think that that was part of Dr. Hancock's testimony that was recited in the IJ's opinion. I don't think that the IJ actually found that. I think that the IJ's findings were rather limited, but I could find that quickly. Well, on page 28 of the appendix, the IJ talks about the unrebutted evidence. And I guess this is what you're saying, I guess you could look at this work. It says the unrebutted evidence in the record points to a high degree of discrimination and violence. And then the IJ says that the IJ is satisfied that persecution has been established on account of race, ethnicity. He then goes on to talk about the discrimination that exists. But then goes from talking about discrimination to talk about the failure to respond to societal violence. And then says, indeed, in many instances, it is the government in the guise of the police who target Romani for violence based solely on their race or ethnicity. Such condoning, it is certainly inarticulate. Well, this is the section, he just read from the section that you say in your brief constitutes the findings of fact of the IJ. And then such condoning of disparate treatment of its Romani citizens on a wide scale amounts to persecution. Yes, okay, let me just respond to that briefly, and thank you for pointing it out to me. This is a finding. However, the conclusion that this amounts to persecution, I think, is a legal conclusion. And I believe that what the, I think the BIA accepts the fact that there is violence, some of it is condoned by the police and so on. I think that the BIA is concluding that that does not support a finding of persecution. If you get violence against a group that is condoned by the police, you can start breaking that down into what are the individual acts. But if you generally have a country where there is officially sanctioned police violence against a group, you're saying that doesn't rise to the level of persecution against that group? It may. If it's systemic and pervasive, it may. He does say, in many instances, what he actually says is, indeed, in many instances, it is the government in the guise of its police who target Romani for violence based solely on their race or ethnicity. And the BIA considered that that was not sufficient to prove persecution. I'm sorry, I can't give you a more definitive answer, I think, but that's what I think. The spin put on the record without saying that it was a finding of fact had sufficient velocity to get the immigration judge where you said you wanted to go. But if you move the spin, the testimony itself doesn't provide enough velocity to get him there. Yes, and I think that that's what the BIA was saying, possibly not too artfully. I want to make one more point, which I think is important. If your Honor should decide to grant a petition for review, the remedy, I completely disagree on the remedy. The remedy is not to go back and apply your view of the law to the IJ's fact findings. The remedy is to remand this to the BIA so that the BIA can apply the proper standard of review, if it's your conclusion that the BIA did not apply this proper standard of review. Any more questions, Your Honor? No. Thank you. Thank you. Your Honor, just a couple of points in rebuttal. First of all, I want to respond to the last thing that my worthy opponent said, which is that this court should remand to the BIA if it grants the petition. This court— It would remand because of the incorrect standard of review. Right. This court is in just as good of a position to apply legal standards to finding the fact, which is exactly what would happen if this court remands to the BIA. This court is actually well-suited to do that. And, in fact, as I'm arguing, on appeal, if that came back up, if the BIA applied the law to the facts to generate a conclusion, that's a conclusion of law. If it came back to this court, I would argue that that would be reviewed under the de novo standard as well. So this court would essentially just redo what would otherwise happen on remand. So I believe that it's appropriate and it would be in the interest of judicial efficiency and economy for this court to simply perform the analysis itself. It's perfectly capable of doing so. Further, the government continues to insist that this court should review the findings, quote-unquote, of the BIA. And that's just wrong, Your Honors. Again, the BIA cannot—under applicable regulations, it can make findings of fact. It can't do that anymore. That was then. This is now. It can no longer make findings. The only findings that remain relevant in these cases are those that are made by the immigration judge. As to the idea that the immigration judge was simply reciting testimony, I think Judge McKee properly noted that on page 28A of the appendix, the immigration judge says the unrebutted evidence in this record points to such a high degree of discrimination and violence, et cetera. At that point in time, he is essentially adopting that testimony as being valid and credible testimony. And those are the findings of fact, Your Honors. And I want to also just reiterate a little bit the idea of how this is now supposed to work under the new regulatory scheme. And this is coming from actually the Department of Justice itself promulgating the regulations in 2002 at 67 Federal Register 54878-01, 67 FR 54878-01, describing the new clearly erroneous standard of review that now applies when the BIA reviews the IJ's fact finding. The DOJ says the distinction requires a more refined analytical approach to deciding cases, but focuses on the qualities of adjudication that best suit the different decision makers. Immigration judges are better positioned to discern credibility and assess the facts with the witnesses before them. The board is better positioned to review the decisions from the perspective of legal standards and the exercise of discretion. The DOJ goes on to say the immigration judge's determination of what happened to the individual is a factual determination that will be reviewed under the clearly erroneous standard. The IJ's determinations of whether these facts demonstrate harm that rises to the level of persecution or whether the harm was on account of a protected ground are questions that will not be limited by the clearly erroneous standard. And I think that's exactly right. That's a correct statement. That's the DOJ's interpretation of its own regulation, Your Honor. I think this court is bound to follow it. Thank you for your time. Thank you, Craig and Russ, in case you take a minute on your time. I must say, both calls were exceptionally well-argued. I'm not sure I've ever seen either of you before. I hope we see you again from both perspectives. It's just a very, very fine and very helpful role. I love you. Thank you very much. Thanks. Next matter is Andre Blaylock from Precious City, Philadelphia.